IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

RICHARD W. DEHAAN,                    *

     Plaintiff,                    *

vs.                                   *
                                               CASE NO. 4:09-CV-35 (CDL)
PFIZER, INC.,                         *

     Defendant.                    *

_____

O R D E R

Plaintiff, Richard W. Dehaan ("Dehaan"), alleges that Defendant, Pfizer ("Pfizer"), terminated his employment because he complained about Pfizer's alleged discrimination against its female and minority employees. Dehaan asserts claims against Pfizer for unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and for intentional infliction of emotional distress under Georgia law. Pfizer responds that it did not retaliate against Plaintiff in any way and that Plaintiff's employment was terminated when he refused to return to work as instructed. It seeks summary judgment as to Dehaan's claims. For the following reasons, Pfizer's Motion for Summary Judgment (ECF No. 31) is granted as to Dehaan's Title VII claims. The Court declines to exercise supplemental jurisdiction over Dehaan's remaining state law intentional infliction of emotional distress claim, and that claim is dismissed without prejudice. *See*

28 U.S.C. § 1367(c)(3).  Finally, the Court denies Pfizer's request for its costs and attorneys' fees.

## PLAINTIFF'S ABANDONED CLAIMS

Plaintiff's *pro se* Complaint has been whittled down during the pendency of this action.  It began with broad allegations vaguely asserting claims for race, sex, and national origin discrimination. After retaining counsel in the course of the litigation, all discrimination claims, except for his retaliation claim, were clearly abandoned.  Although he never amended his Complaint to formally dismiss those claims, Dehaan's counsel made it abundantly clear that Dehaan was only pursuing a retaliation claim.  Disc. Hr'g Tr. 3:22-4:2, 4:9-11, Mar. 30, 2010, ECF No. 29 [hereinafter Disc. Hr'g Tr.] (THE COURT: "As I understand it, the retaliatory adverse employment action that the plaintiff's case is based upon is the termination of his employment on May 21st of 2008.  Is that correct?"  MR. ROPER: "That is the only actionable claim, Your Honor."  THE COURT: "He does not contend that he suffered race or gender discrimination; correct?" MR. ROPER: "He does not."); *see also* Pl.'s Dep. 310:5-19, 311:18-312:2, 314:22-315:2, 324:14-17, 326:12-17, 332:7-333:19, Oct. 15, 2009, ECF No. 33; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 117-19, ECF No. 38 [hereinafter Pl.'s Resp. to Def.'s SMF].  The Court also observes that Plaintiff did not address his race, sex, or national origin discrimination claims in

2

his response to Defendant's motion for summary judgment. *See generally*, Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 37 [hereinafter Pl.'s Resp.]. Having failed to pursue those claims at the summary judgment stage, Plaintiff is deemed to have abandoned them. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Thus, the Court finds that the only claims that remain pending are Plaintiff's Title VII claim for retaliation and his state law claim for intentional infliction of emotional distress.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

The evidence, viewed in the light most favorable to Dehaan, reveals the following.[1]

## I. Dehaan's Employment with Pfizer in Texas

Dehaan began working for Pfizer in 1984 as a pharmaceutical sales representative in San Angelo, Texas. Pfizer promoted Dehaan twice while he was in Texas, first to assistant regional manager, and then to district manager. In 1998, however, Dehaan was demoted by Pfizer Regional Manager, Jo Anne Harper, after an investigation,

---

[1]Although Dehaan purports to dispute certain material facts, he has not pointed to sufficient evidence to demonstrate genuine disputes as to those facts. In response to Pfizer's statement of material facts ("SMF"), Dehaan denied some of Pfizer's proffered facts, but he pointed the Court to no evidence to demonstrate a material factual dispute. Dehaan's bare assertions, with no record support, are not sufficient to create a genuine fact dispute. *See* Fed. R. Civ. P. 56(e)(2) (effective until Dec. 1, 2010) (stating that a party opposing summary judgment must "set out specific facts showing a genuine issue for trial"); *accord* M.D. Ga. R. 56 ("All material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate."). Dehaan responded to several of Pfizer's proffered statements of fact by stating he could not admit or deny them. *See, e.g.,* Pl.'s Resp. to Def.'s SMF ¶¶ 15, 94-95. Like Dehaan's bare assertions, these responses do not raise a material factual dispute. M.D. Ga. R. 56 (stating that "[t]he response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Rule 56(f) of the Federal Rules of Civil Procedure[,]" which Dehaan had not). Notwithstanding Dehaan's failure to follow this Court's local rules, Pfizer, as the moving party, maintains the burden to demonstrate the absence of a genuine dispute of material fact. *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008); *see also* Fed. R. Civ. P. 56(e)(3) (noting that if a party fails to properly support an assertion of fact the Court may grant summary judgment if the motion and supporting materials show that the movant is entitled to it). The Court acknowledges and has fulfilled its duty to "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese*, 527 F.3d at 1269 (internal quotation marks omitted).

4

prompted by complaints from Dehaan's subordinates, revealed that Dehaan did not meet Pfizer's expectations of respectful treatment of all employees.[2]  Pl.'s Dep. Ex. 2, Letter from J. Harper to R. DeHaan, July 31, 1998.  Upon learning of his demotion, Dehaan requested a transfer to Columbus, Georgia, which Pfizer granted.

## II.  Dehaan's Transfer to Columbus, Georgia

Dehaan's position upon his transfer to Columbus was senior professional healthcare consultant (i.e., sales representative).  His District Manager in Columbus was Gregory Jones and his Regional Manager was George Zorrilla.

In September 2000, Dehaan received his first "final written warning" from Ann Hodges, Pfizer human resources director for the southeast region, after an investigation concluded that Dehaan "displayed a lack of respect for people and a lack of teamwork."  Pl.'s Dep. Ex. 3, Final Warning Letter From A. Hodges to R. Dehaan 1, Sept. 8, 2000.  Hodges noted that "[t]hese behaviors are similar in

---

[2]Dehaan appears to contend that his demotion was retaliation for his "complaints about racial misconduct and sexual harassment of persons in his district."  Pl.'s Resp. to Def.'s SMF ¶ 5.  He also contends that Pfizer's stated reason for his demotion is pretext, as evidenced by: (1) his district's receipt of a "Vice President's Cabinet Award" for sales while under his management, *id.* ¶ 6 (citing Dehaan Aff. ¶ 13); and (2) a June 4, 1996 letter from Jo Anne Rolle Harper to a representative in Dehaan's district stating that Dehaan's treatment of him "has been fair and appropriate," *id.* ¶ 9 (citing Harper Dep. Ex. 4, Letter from J. A. R. Harper to F. Wolfe, June 4, 1996).  These allegations are irrelevant to the only actionable conduct Dehaan alleges, which occurred over ten years later.

nature to the behaviors for which [Dehaan] w[as] removed from [his] district manager position." *Id.*

In January 2003, Dehaan received his second "final written warning," this time from his District Manager, Gregory Jones, based on Dehaan's unacceptable conduct toward Jones, his inability to work with his co-workers, and his questioning of management in an inappropriate manner.[3] Pl.'s Dep. Ex. 5, Final Warning Letter From G. Jones to R. Dehaan, Jan. 7, 2003. Jones informed Dehaan that his conduct "demonstrate[d] an unacceptable level of performance with respect to the core behaviors of teamwork, decision-making and work ethic/initiative [and that] [i]mmediate and sustained improvement must be made in all of these areas." *Id.*

### III. The "Code Blue" Email and Defendant's Investigation

On November 2, 2007, Dehaan sent an email with the subject line "CODE BLUE" to Jeffrey Kindler, Pfizer's Chief Executive Officer, and Jeffery Williams, an attorney in Pfizer's Corporate Compliance group.[4] Pl.'s Dep. Ex. 8, Email from R. Dehaan, Nov. 2, 2007 [hereinafter

---

[3]In his response to paragraph 23 of Pfizer's SMF—which addresses Dehaan's January 7, 2003 "Final Warning Letter"—Dehaan cited "Exhibit M." Pl.'s Resp. to Def.'s SMF ¶ 23. Dehaan, however, attached no exhibits to his response to Pfizer's SMF or otherwise indicated the location of "Exhibit M." Even if the Court were to speculate that Dehaan intended this citation to reference exhibit M to his brief in opposition to Defendant's motion for summary judgment, that exhibit does not demonstrate a material factual dispute.

[4]According to Dehaan, "CODE BLUE" is a term used in hospitals that "means someone's dying over here. Run." Pl.'s Dep. 193:3-7.

CODE BLUE Email]. Dehaan also sent his "CODE BLUE" email to individuals outside of Pfizer, including a Federal Bureau of Investigation ("FBI") agent and the Speaker of the United States House of Representatives Nancy Pelosi. Dehaan attached to his "CODE BLUE" email a thirty-nine page document also titled "CODE BLUE" which raised, among other things, allegations of discrimination by Pfizer against other employees during Dehaan's employment with the company in both Texas and Georgia.[5] CODE BLUE Email at handwritten pages 99-139. The "CODE BLUE" email also lodged allegations of criminal activity at Pfizer. Dehaan stated that his "CODE BLUE" email was the culmination of his complaints made to Pfizer since at least 1993.

Dehaan's "CODE BLUE" email included threatening statements identifying individuals, including Pfizer employees, as "primary targets" and "secondary targets." *Id.* at handwritten pages 101-02. It also made declarations about Pfizer employees such as "This is WAR," "you will pay—GOT THAT!", and "Go F . . . Yourself!" *Id.* at handwritten pages 113, 115, 117.

Lourdes Delgado, Pfizer's human resources director for the southeast region, received a copy of Dehaan's "CODE BLUE" email and, based on its tone, became concerned that Dehaan might harm himself or others. Delgado contacted Dehaan and informed him that Pfizer was

---

[5] In the remainder of this Order the Court refers to the "CODE BLUE" email and all of its attachments collectively as the "CODE BLUE" email.

requiring him to enroll in counseling through the company's Colleague Assistance Program ("CAP"). Pfizer also placed Dehaan on leave with full pay and benefits while he was referred to CAP.

Upon receiving Dehaan's "CODE BLUE" email, both Lourdes Delgado and Jeffery Williams reviewed it to determine what, if any, matters should be investigated and who should be assigned to handle any further investigation. After that review, Delgado investigated any matters within her human resources expertise, such as allegations of racial comments. Williams investigated matters set forth in Dehaan's "CODE BLUE" email that related to compliance.

## IV. The First Meeting Regarding Dehaan's Return to Work

Dehaan participated in counseling as a result of his referral to the CAP and was notified that he was released to return to work, effective January 22, 2008. On January 22, 2008, Dehaan attended a meeting with Lourdes Delgado, Pfizer Regional Manager Russell Patterson, and Lee Gibson to discuss his return to work. During that meeting, Patterson issued Dehaan a third "final written warning" for the unprofessional and inappropriate manner in which he communicated the issues raised in his "CODE BLUE" email. Pl.'s Dep. Ex. 14, Final Warning Letter From R. Patterson to R. Dehaan, Jan. 22, 2008. At that time, Dehaan requested and was granted additional paid leave until he met with Jeffery Williams on January 30, 2008, to discuss the compliance concerns he raised in his "CODE BLUE" email. After

8

meeting with Williams on January 30, 2008, Dehaan was permitted to remain on paid leave until Williams completed his compliance investigation.

**V.    The Second Meeting Regarding Dehaan's Return to Work**

On May 1, 2008, Gibson contacted Dehaan to let him know that Williams had completed his compliance investigation and asked Dehaan to come to Pfizer's regional office for a meeting on May 2, 2008.  On May 2, 2008, Dehaan met with Delgado, Gibson, and Pfizer Interim Regional Manager Shelley Scott.  During this meeting, Delgado told Dehaan that Williams's compliance investigation was complete, that appropriate actions were taken or being taken, and that Dehaan was expected to return to work in his previous position on May 5, 2008. Delgado told Dehaan that if he did not return to work on May 5, 2008, Pfizer would consider him to have abandoned his job.  In Dehaan's opinion, however, Williams had not completed his investigation because Dehaan believed Melissa Heard, Dehaan's co-worker, should have been terminated as a result of the investigation.  Heard remains employed by Pfizer.

**VI.   Dehaan's Planned Return to Work on May 5, 2008**

On May 5, 2008, Dehaan met with his district manager, Lee Gibson, in Columbus to prepare for his return to work in his previous position as a member of Pfizer's sales force.  Gibson reiterated what Delgado had told Dehaan on May 2, 2008: that Dehaan was expected to

return to work in his previously held position, which included working with Melissa Heard, and that his failure to do so would be considered job abandonment. Dehaan told Gibson that he believed he had other options and that he believed Gibson should "go to the FBI for his own preservation." Pl.'s Dep. 278:17-280:14. Dehaan then requested to take vacation, to which Gibson responded that he would have to seek approval from Delgado of Dehaan's request. Delgado contacted Dehaan on May 6, 2008, and informed him his request for vacation was approved. Dehaan's vacation was to last until May 21, 2008, when he was expected to return to work.

## VII. Dehaan's Failure to Return to Work and Termination

Dehaan did not return to work on May 21, 2008, because he believed he could be implicated in alleged criminal activity at Pfizer. More specifically, he claims he was concerned about returning at that time because he believed his district manager, Lee Gibson, had violated or was aware of violations of federal law regarding Pfizer's promotion of pharmaceuticals. Dehaan also believed he should not have to work with Melissa Heard, as he alleged that she had engaged in criminal activity.[6]

---

[6]Dehaan contends that he "was ready to return to work and did, in fact, return to work on May 21, 2008 conditional upon not being business partnered with persons known to have engaged in felonious pharmacy marketing." Pl.'s Resp. to Def.'s SMF ¶ 74. In explaining his position, Dehaan cited to his own deposition where he alleges another Pfizer employee engaged in improper conduct, id. (citing Pl.'s Dep. 364:14-20), and to Lourdes Delgado's deposition where Delgado states she referred Dehaan's

Dehaan contacted Gibson by telephone on May 21, 2008, the day he was to return to work. Gibson told Dehaan that they needed to meet and work together that day. Dehaan responded that if Gibson came to Columbus to work with Dehaan, their "first stop" would be at the Columbus Police Department or the FBI, so that Gibson could "turn himself in." Pl.'s Dep. 288:3-7, 298:19-299:4, 325:3-6. Dehaan also told Gibson that he would not take further direction from Lourdes Delgado because Delgado was "in a conflict of interest with [Dehaan]." *Id.* at 288:21-289:19. Finally, Dehaan told Gibson that he intended to remain in his paid leave status and that he "h[ad] to get with Jeff Williams to have some understandings" because Dehaan did not believe that Williams's compliance investigation was complete. *Id.* at 288:15-20. That same day, however, Dehaan received a voicemail message at home from Jeffery Williams. Williams told Dehaan that his investigation was complete and said, "[t]here's nothing in Columbus that would prevent [Dehaan] from reengaging with management." Pl.'s Dep. 301:13-19; *see also id.* at 302:14-21, 305:22-25; Pl.'s Dep. Ex. 20, Letter from R. Dehaan to J. Williams, May 22, 2008.

---

allegations that Gibson participated in illegal pharmaceutical promotion to Pfizer's compliance department for investigation, *id.* (citing Delgado Dep. 84:2-19). Neither of these citations, however, refute the fact that Dehaan refused to return to work as directed by Pfizer on May 21, 2008.

After speaking with Dehaan, Gibson contacted Delgado and relayed his conversation with Dehaan to her. Delgado consulted with Pfizer's management team, including Mike Sweitzer and Kathy Spencer-Pike, who made the decision that Dehaan had abandoned his job because he did not return to work on May 21, 2008, as directed. Delgado communicated Pfizer's determination that Dehaan had abandoned his job by letter and email to Dehaan on May 21, 2008.

## VIII.    Dehaan's EEOC Charge

Dehaan filed a charge of discrimination against Pfizer with the EEOC on November 14, 2008. Pl.'s Dep. Ex. 21, EEOC Charge of Discrimination, Nov. 14, 2008 [hereinafter EEOC Charge]. In his EEOC charge, Dehaan alleged only retaliation by Pfizer. *Id.* The only date of retaliatory action alleged by Dehaan in his EEOC charge is May 21, 2008, the last day of Dehaan's employment with Pfizer. *Id.* Dehaan's claim of retaliation in his EEOC charge is based on the contention that he "stood up for" employees within protected classes at Pfizer and complained of discrimination on their behalf, not his own. Pl.'s Dep. 311:18-23, 324:11-17, 332:15-333:10. After Dehaan received a notice of right-to-sue letter from the EEOC on November 22, 2008, Pl.'s Dep. Ex. 24, EEOC Notice of Right to Sue, Nov. 20, 2008, he filed his original Complaint in Muscogee County Superior Court on February 19, 2009, Pl.'s Dep. Ex. 25, Complaint,

Feb. 19, 2009. Pfizer subsequently removed Dehaan's Complaint to this Court. *See generally*, Notice of Removal, ECF No. 1.

DISCUSSION

Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). Dehaan alleges that Pfizer retaliated against him for complaining about discrimination against other female and minority employees. Where, as here, a plaintiff presents no direct evidence of retaliatory intent, the plaintiff may proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *E.g., Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008). Under this framework, the plaintiff must establish a prima facie case of retaliation by showing that "(1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *E.g., Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). If the plaintiff establishes a prima facie case of retaliation, then the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the challenged employment action. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). "If

13

the employer offers such legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Crawford*, 529 F.3d at 976 (internal quotation marks omitted).

## I. Dehaan Has Failed to Establish a Prima Facie Case of Retaliation

The Court finds that Dehaan has failed to establish a prima facie case of retaliation because he has not established a causal connection between his statutorily protected conduct and the materially adverse employment action. As an initial matter, the Court finds that Dehaan's retaliation claim is limited to those alleged retaliatory acts that occurred on or after May 18, 2008. Dehaan's briefing is littered with time-barred allegations which Dehaan contends demonstrate "escalating retaliatory actions" by Pfizer. Pl.'s Resp. 19; *see also id.* at 11 n.6 (acknowledging that Dehaan's 1998 demotion and much of the other conduct Plaintiff discussed in his briefing is not actionable). Filing a timely charge of discrimination with the EEOC, however, is a condition precedent to bringing a legal action in federal court pursuant to Title VII. 42 U.S.C. § 2000e-5(e)(1) (stating that Title VII charge of discrimination must be filed within 180 days after the alleged unlawful employment practice).

Here, Dehaan filed his sole EEOC charge on November 14, 2008. EEOC Charge. Therefore, Dehaan's retaliation claim is limited to

14

those alleged retaliatory acts that occurred on or after May 18, 2008. The only alleged adverse employment action on or after May 18, 2008 is Pfizer's termination of Dehaan's employment on May 21, 2008. *See* Disc. Hr'g Tr. 3:22-4:2 (THE COURT: "As I understand it, the retaliatory adverse employment action that the plaintiff's case is based upon is the termination of his employment on May 21st of 2008. Is that correct?" MR. ROPER: "That is the only actionable claim, Your Honor."). The Court, accordingly, limits its consideration to that one alleged retaliatory act.[7]

Pfizer admits for purposes of this summary judgment motion that Dehaan's November 2, 2007 "CODE BLUE" email was statutorily protected activity. Def.'s Mem. in Supp. of Mot. for Summ. J. 15 [hereinafter Def.'s Mot. for Summ. J.]. Dehaan apparently contends that he also engaged in additional statutorily protected activity by bringing "continuous open door complaints" from 2002 until the day he was terminated. Pl.'s Resp. 14. Dehaan, however, has not directed the Court to evidence of any such complaints other than his "CODE BLUE" email. Therefore, the Court limits its analysis of Dehaan's statutorily protected activity to his "CODE BLUE" email.

---

[7] The Court notes that this result is consistent with Dehaan's EEOC charge where he indicated that both the earliest and latest date that retaliatory action took place was May 21, 2008, the date Pfizer terminated his employment. EEOC Charge.

The parties dispute whether Dehaan was terminated or voluntarily resigned when he failed to return to work on May 21, 2008, as directed by Pfizer. *See* Def.'s Mot. for Summ. J. 15-17 (contending Pfizer expected Dehaan to return to work on May 21, 2008, as directed and took no affirmative steps to end his employment). The Court, however, need not decide this issue because, even assuming that Dehaan's "CODE BLUE" email is statutorily protected activity and that he was terminated, which is indisputably a materially adverse employment action, the Court still finds that Dehaan has failed to establish a causal connection between the two events.

Though the "burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action," "mere temporal proximity, without more, must be very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.*; *see also Brown*, 597 F.3d at 1182 (stating three-month interval between protected expression and employment action is too long to establish inference of causation). Here, the six-month gap between Dehaan's November 2, 2007 "CODE BLUE" email and his May 21, 2008 termination does not establish a causal connection between the two events. "Thus, in the absence of other evidence tending to show

16

causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Brown*, 597 F.3d at 1182 (internal quotation marks omitted).

Plaintiff has produced no other evidence showing a causal connection between the "CODE BLUE" email and his termination. To the contrary, Pfizer produced evidence that it responded to Dehaan's "CODE BLUE" email by: (1) referring Dehaan to its CAP counseling program with full pay; (2) meeting and corresponding with Dehaan multiple times via compliance attorney Jeffery Williams regarding the allegations Dehaan raised in his "CODE BLUE" email; (3) permitting Dehaan to stay on paid leave pending the completion of Williams's four-month compliance investigation; (4) meeting with Dehaan on three separate occasions—on January 22, 2008, May 2, 2008, and May 5, 2008—and attempting to meet with him a fourth time—on May 21, 2008—to plan his return to work at the same position he held before the "CODE BLUE" email with no change in his title, position, pay, or benefits; and (5) granting Dehaan's vacation request when he independently concluded that Williams's investigation was not complete. The Court finds that Pfizer's response to Dehaan's "CODE BLUE" email does not support any causal connection between the email and his termination.

For all of these reasons, the Court finds that Dehaan has failed to establish an essential element of his prima facie case of retaliation—a causal connection between protected expression and the adverse action.  Therefore, Pfizer is entitled to summary judgment on Dehaan's retaliation claim.

## II. Dehaan Failed to Rebut Pfizer's Legitimate, Non-Retaliatory Reason for His Termination

Even if Dehaan had presented sufficient evidence to establish a causal connection between his "CODE BLUE" email and his termination, thereby establishing a prima facie case of retaliation, he has failed to produce sufficient evidence to create a genuine dispute of material fact that Pfizer's proffered reason for terminating him was a pretext for retaliation.  Pfizer contends that it terminated Dehaan because he abandoned his job when he did not return to work on May 21, 2008, as directed by Pfizer.  Because Pfizer's proffered reason is one that might motivate a reasonable employer, Dehaan "must meet that reason head on and rebut it[.]" *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).  Dehaan may demonstrate that Pfizer's proffered reason is pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Pfizer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d

1344, 1348 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). A reason is not pretextual, however, "unless it is shown both that the reason was false, and that [retaliation] was the real reason." *Id.* at 1349 (internal quotation marks omitted).

Dehaan has failed to produce sufficient evidence to create a genuine issue of material fact that Pfizer's proffered reason for terminating him was a pretext for retaliation. It is undisputed that both Lourdes Delgado and Lee Gibson told Dehaan that he was expected to return to work at his previously held position on May 5, 2008, and that failure to do so as directed by Pfizer would be considered job abandonment. Pl.'s Dep. 270:9-20; 278:9-280:4. It is also undisputed that, after Pfizer granted Dehaan's vacation request, Dehaan was expected to return to work at his previously held position on May 21, 2008. Pl.'s Dep. 283:5-7, 285:23-286:2, 286:24-287:2. Finally, there is no dispute that Dehaan did not return to work on May 21, 2008, *as directed by Pfizer*. Dehaan contacted his district manager Lee Gibson on May 21, 2008, and Gibson told Dehaan that they needed to meet and work together that day. Pl.'s Dep. 298:19-24, 299:12-21; Gibson Dep. 204:18-205:3. It is undisputed that Dehaan refused to do so. Instead, Dehaan told Gibson that if he came to Columbus, their "first stop" would be at the Columbus Police Department or the FBI, so that Gibson could "turn himself in." Pl.'s Dep. 288:3-7, 298:19-299:4, 325:3-6. Dehaan also told Gibson that he

19

intended to remain in paid leave status.  Pl.'s Dep. 290:21-25.

Dehaan contends that he did return to work on May 21, 2008, since he

performed "non-field[-]related duties that were a part of his job

description."  Pl.'s Resp. 13; *see also id.* at 15 (admitting that

Dehaan "did not go into the field with his immediate supervisor" but

"did return to work to the extent he engaged in activities that were

part of his job description") & 19 (stating Dehaan "began performing

non-field work associated with his position" after Gibson refused to

accompany Dehaan to the FBI).  Those "non-field[-]related duties,"

however, were not what Pfizer directed Dehaan to perform on

May 21, 2008.  Dehaan's claim that he conducted "non-field[-]related

duties" on May 21, 2008, therefore, does nothing to reveal "such

weaknesses, implausibilities, inconsistencies, incoherencies or

contradictions in [Pfizer's] proffered legitimate reasons for its

actions that a reasonable factfinder could find them unworthy of

credence."  *Springer*, 509 F.3d at 1348 (internal quotation marks

omitted).  For all of these reasons, the Court concludes that Dehaan

did not meet his burden of demonstrating a genuine fact dispute on

the question of pretext.  Accordingly, for this additional reason,

Pfizer is entitled to summary judgment on Dehaan's retaliation claim.

## III.  Pfizer's Request for Costs and Attorneys' Fees

Pfizer also seeks its costs and attorneys' fees incurred in

defending against Dehaan's claims.  Def.'s Mot. for Summ. J. 2, 24-

26.  Pfizer contends that Dehaan's discrimination claims, which he ultimately abandoned, were clearly frivolous and that he continued to litigate them after they clearly became so.  Pfizer further contends that Dehaan's retaliation claim, which the Court today finds cannot withstand summary judgment, also lacks any reasonable justification. Title VII provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k).  Under this provision, "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1977); *accord Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007).  Thus, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422.

Pfizer first argues that Dehaan's abandoned claims were clearly frivolous and that he continued to litigate them after they clearly became so.  The Court finds, however, that Dehaan abandoned those claims in a timely manner, and therefore, Defendant is not entitled to its fees and costs regarding those abandoned claims.  Here,

Dehaan's counsel made it abundantly clear at the Court's March 31, 2010 discovery hearing—which occurred before discovery closed—that Dehaan was only pursuing a retaliation claim. Disc. Hr'g Tr. 3:22-4:2, 4:9-11 (THE COURT: "As I understand it, the retaliatory adverse employment action that the plaintiff's case is based upon is the termination of his employment on May 21st of 2008. Is that correct?" MR. ROPER: "That is the only actionable claim, Your Honor." THE COURT: "He does not contend that he suffered race or gender discrimination; correct?" MR. ROPER: "He does not.").[8] Therefore, the Court finds that Pfizer is not entitled to its costs and attorneys' fees incurred in defending the discrimination claims that Dehaan clearly abandoned in open court before the close of discovery.

The Court further finds that although Dehaan's Title VII retaliation claim fails as a matter of law, it was not frivolous, unreasonable, or groundless. Accordingly, Pfizer's request for its costs and attorneys' fees incurred in defending Dehaan's Title VII retaliation claim is also denied.

---

[8]In fact, Pfizer's counsel acknowledged prior to its motion for summary judgment that Dehaan had already abandoned his Title VII race, sex, and national origin discrimination claims. Def.'s Mot. for Summ. J. Ex. 2, Letter from M. Kotun to J. Roper, June 22, 2010, ECF No. 31-3 ("Plaintiff acknowledged during a hearing before the Court on March 30, 2010, that his sole claim is for retaliation.").

CONCLUSION

For the reasons set forth above, Pfizer's Motion for Summary Judgment (ECF No. 31) is granted as to Dehaan's Title VII claims. The Court declines to exercise supplemental jurisdiction over Dehaan's remaining state law intentional infliction of emotional distress claim, and that claim is dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3). Finally, the Court denies Pfizer's request for its costs and attorneys' fees.

IT IS SO ORDERED, this 16th day of February, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE